Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

Ryan W. Aikin
AIKIN LAW OFFICE, PLLC
PO Box 7277
Missoula, MT 59807
406-840-4080
Ryan@aikinlawoffice.com

    Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | | |
|---|---|---|
| JOSEPH WAYNE SEYMOUR, | ) | Cause No. CV-22-73-GF-BMM-JTJ |
| | ) | |
| Plaintiff, | ) | **COMPLAINT and** |
| | ) | **JURY DEMAND** |
| v. | ) | |
| | ) | |
| NATHAN CONTRERAZ, TYREL FLAMMANG, | ) | |
| RILEY FINNEGAN, DAVID FIREBAUGH, | ) | |
| MATTHEW LENNICK, CITY OF BILLINGS, | ) | |
| AMERICAN MEDICAL RESPONSE | ) | |
| AMBULANCE SERVICE, INC., and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

1. This is an action for deprivation of civil rights under color of law, and for assault and battery, negligence, and other wrongful acts. This action arises out of both federal and state law for damages resulting from the unlawful conduct of Billings Police Officers Nathan Contreraz, Tyrel Flammang, Riley Finnegan, David Firebaugh, and Matthew Lennick, as yet unknown law enforcement officers and Emergency Medical Technicians, Defendant American Medical Response Ambulance Service, Inc., and the City of Billings.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

3. Jurisdiction for state law claims against all Defendants pursuant to the law of the State of Montana is conferred upon this Court pursuant to 28 U.S.C. § 1367.

4. Venue in this case is proper under 28 U.S.C. § 1391, LR 3.2(b), and § 25-2-122(2)(b), MCA.  Defendant American Medical Response Ambulance Service, Inc., is a foreign corporation doing business in Montana, and Plaintiff is a citizen of the State of Montana and a resident of Cascade County, Montana.

5.     Because Plaintiff makes no allegations against the State of Montana, pursuant to MCA § 2-9-301, he is not required to file administrative claims against the City of Billings prior to filing this action.

## THE PARTIES

6.     Plaintiff Joseph Seymour ("Plaintiff" or "Seymour") is a citizen of the State of Montana and a resident of Cascade County, Montana.

7.     Based on information and belief, Defendants Nathan Contreraz ("Contreraz"), Tyrel Flammang ("Flammang"), Riley Finnegan ("Finnegan"), David Firebaugh ("Firebaugh"), and Matthew Lennick ("Lennick") are citizens of the State of Montana and residents of Yellowstone County, Montana. They were employees of the City of Billings at all times pertinent to this matter. They are sued in both individual and official capacities.

8.     Defendants Does 1-10 are individuals whose true identities and capacities are as yet unknown to Plaintiff and his counsel, despite diligent inquiry and investigation, and who acted herein as described more particularly below in connection with the breaches of duties and/or violations of law alleged here and who in some manner or form not currently discovered or known to Plaintiff may have contributed to or be responsible for the injuries alleged here. The true

names and capacities of the Doe Defendants will be substituted as they become known.

9. Defendant City of Billings is a municipality of the State of Montana located in Yellowstone County.

10. American Medical Response Ambulance Service, Inc., ("AMR") is a foreign profit corporation, formed in Delaware and headquartered in Colorado, that provides ambulance services in Billings, Montana.

## FACTUAL ALLEGATIONS

11. Around 1:00 a.m. on August 13, 2019, Katrina Bryan, an employee of the Zip Trip gas station at 1544 Broadwater Avenue in Billings, called 911 to report a man "walking back and forth" for the past "half hour, hour and half" who was "twitchy" and "staring at everybody."

12. Bryan reported that the man was "never really bothering anybody" but that she was "concerned on how he's acting."

13. When asked if she had seen any weapons, Bryan said, "No . . . Like I said, he's just acting really weird and he's hanging around the area."

14. Defendant Officer Contreraz responded to the call for service and located a man matching a description provided by Bryan walking through an alley behind the gas station. The man was later identified as Plaintiff Seymour.

15. Dashcam footage from Officer Contreraz's vehicle shows Seymour walking through the alley as Contreraz approached and provides audio from the entire encounter.

16. Officer Contreraz stopped and exited his vehicle and asked Seymour what he was "up to."

17. Seymour responded, "Nothing. Walking to the gas station."

18. Officer Contreraz asked Seymour if he had an ID on him, and Seymour said he did not.

19. Officer Contreraz then asked Seymour if he had any weapons. Seymour asked, "For what reason? I ain't done nothing wrong."

20. Officer Contreraz told Seymour he was responding to a call regarding Seymour. He then told Seymour, "So real quick, I'm just gonna pat you down for weapons."

21. Seymour responded, "You're not touching me. I didn't do nothing illegal. You're not touching me. You can't . . . legally touch me for no reason."

22. Officer Contreraz responded, "Yes, I can. Turn around."

23. Seymour asked for Officer Contreraz to summon his Sergeant. He told Contreraz he "didn't have anything on" him and there was no reason for Contreraz to harass him.

24. Officer Contreraz ignored Seymour's protests and repeatedly told him to turn around.

25. During this time, Defendant Officer Flammang arrived, exited his vehicle, and joined Officer Contreraz.

26. The remainder of the interaction between Seymour and the officers is clearly captured on the dashcam video footage from Flammang's patrol vehicle, which also captured audio from the entire encounter.

27. As Flammang walked up to Contreraz, Seymour relented to Officer Contreraz's demands and turned around with his back facing the officers while holding his hands in the air.

28. Contreraz patted Seymour down beginning on Seymour's right shoulder, while Flammang held onto Seymour's left arm.

29. One of the officers accused Seymour of "pulling away" and said "put him in cuffs for now."

30. Officer Flammang then grabbed Seymour's arm and shoulder and threw Seymour face-first to the ground.

31.  Both officers kneeled on the ground on either side of Seymour who lay face-down on the ground. The officers held Seymour down against the ground, with each officer holding and maintaining control of one of Seymour's arms.

32.  While they held Seymour face-down on the ground with his arms restrained, one officer shouted, "Stop resisting!"

33.  Both officers then struck Seymour repeatedly in the face, head, and back while he lay face-down, defenseless and restrained.

34.  The officers shouted "stop resisting" two more times as they continued to beat Seymour while he lay face-down, defenseless and restrained.

35.  Officer Flammang punched Seymour in his lower back eighteen times.

36.  Officer Contreraz struck Seymour's face and head with his fist four times before landing a final blow to the back of Seymour's head with his elbow.

37.  Seymour shouted "okay" and "alright" at least ten times as the officers beat him.

38.  The officers then restrained Seymour's hands behind his back with handcuffs while he continued to lay face-down on the pavement.

39.  The officers threatened to tase Seymour if he moved.

40.  Seymour stated, "I don't know why you guys are doing this."

41.  Contreraz responded, "Because you will not comply."

42. In his report, Officer Flammang claimed that, before he took Seymour to the ground, he observed a "bulge" in Seymour's waistband, which he believed may be a weapon.

43. At no point in the subsequent fifteen minutes of recorded footage did Officer Flammang mention to Contreraz or any of his fellow officers the "bulge" he later claimed to have observed in Seymour's waistband.

44. No other officer mentioned seeing a bulge in Seymour's waistband, and no weapon was found on Seymour's person.

45. As Officers Contreraz and Flammang were placing handcuffs on Seymour, Defendant Officer Finnegan arrived and joined them.

46. Officer Finnegan noted in his report that when he arrived Seymour "was bleeding excessively from his face area" so he "summoned medical."

47. Defendant Officers Firebaugh and Lennick arrived shortly after Officer Finnegan.

48. Defendant Officer Lennick is named as the "Reviewing Supervisor" on the reports prepared by other officers following this incident.

49. Officers Contreraz, Flammang, and Firebaugh manipulated Seymour's body, rolling and shifting it on the pavement, as Seymour shouted in pain and complained that his rib was broken.

50. In response to Seymour's pleas, one of the officers told Seymour to "knock it off."

51. Officers Contreraz. Flammang, and Firebaugh subjected Seymour to a thorough pat search, and Officer Contreraz reached into Seymour's pocket and removed a syringe.

52. While Firebaugh searched Seymour, Seymour shouted obscenities at the other officers, calling them "coward bitches" and accusing them of assaulting him.

53. Officer Finnegan stood a few feet from Seymour, watching and smirking at him for about forty seconds as Seymour lay bleeding on the ground and shouting.

54. Officer Finnegan then walked behind Seymour and placed his knee on Seymour's upper back, pinning him down to the pavement.

55. In his report, Finnegan claimed he kneeled on Seymour's back "to keep him face down so he would not be able to spit blood."

56. Neither Officer Finnegan nor any other officer noted in their reports that Seymour had ever attempted to "spit blood," nor does video footage suggest he did so.

57. Officer Finnegan maintained his position kneeling on Seymour's back for approximately two minutes until an ambulance, operated by Defendant AMR, arrived.

58.     Two emergency medical technicians ("EMT") approached Seymour and began asking him questions.

59.     Seymour at first shouted at the EMTs, said that he did not want medical treatment, and asked to be taken to jail.

60.     The EMTs continued to ask Seymour questions, but Seymour stopped responding, eventually whimpering "get the fuck away from me."

61.     One EMT told the officers, "So, I think he's good enough for jail . . . the only other thing though is that if he continues like this, with this much fighting…"

62.     At this point, Seymour began speaking over the EMT, mocking the EMT's assessment of the situation and pointing out that he was not fighting, but had been brutally assaulted by multiple police officers.

63.     The EMT suggested to the officers that Seymour be given a 400 mg dose of ketamine to "fuckin' knock him the fuck out."

64.     One officer responded to the EMT, "He can be knocked out at this point."

65.     Hearing this, Seymour again protested, saying, "You ain't doing shit. I want an attorney." He then began shouting for help and for an attorney.

66.     The EMT then returned to the ambulance for about two minutes, presumably to prepare the ketamine injection.

67. During this time, Seymour had a much calmer conversation with the officers. He told them that he was not angry anymore and asked them to not inject him with anything. He identified himself as Joseph Seymour and complied with officer commands to adjust his position.

68. When the EMT returned, Seymour also responded calmly and rationally to the EMT's questions until the EMT injected him with ketamine and he appeared to lose consciousness.

69. Seymour was taken to the hospital where he was treated for "minor injuries."

70. Seymour suffered physical injuries to his face and torso and has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") as a result of his interactions with the Defendants on August 13, 2019.

## COUNT 1
### 42 USC § 1983, U.S. Const. amend. IV
### Unreasonable Seizure – Arrest without Probable Cause
### (Defendants Contreraz, Flammang, Finnegan, Firebaugh, Lennick, and Does)

71. Plaintiff hereby incorporates all prior paragraphs.

72. Defendants lacked reasonable suspicion to stop and frisk and lacked probable cause to arrest Plaintiff.

73. At all times in which they interacted with Plaintiff on or about August 13, 2019, Defendants acted within the course and scope of their employment.

74. While acting under color of law, Defendants deprived Plaintiff of his civil rights under the Fourth Amendment to be free from unreasonable seizure, enforceable through 42 U.S.C. § 1983.

## COUNT 2
## 42 USC § 1983, U.S. Const. amend. IV
### Unreasonable Seizure – Excessive Force
### (Defendants Contreraz, Flammang, Finnegan, Firebaugh, Lennick, and Does)

75. Plaintiff hereby incorporates all prior paragraphs.

76. Defendants used objectively unreasonable and excessive force in detaining and arresting Plaintiff.

77. At all times in which they interacted with Plaintiff on or about August 13, 2019, Defendants acted within the course and scope of their employment.

78. While acting under color of law, Defendants deprived Plaintiff of his civil rights under the Fourth Amendment to be free from unreasonable seizure, enforceable through 42 U.S.C. § 1983.

## COUNT 3
## 42 USC § 1983, U.S. Const. amend. XIV
### Due Process – Bodily Integrity
### (Defendants Contreraz, Flammang, Finnegan, Firebaugh, Lennick, and Does)

79. Plaintiff hereby incorporates all prior paragraphs.

80.     Defendants intruded upon Plaintiff's constitutionally protected liberty interest in bodily integrity by forcibly injecting him with ketamine without his consent.

81.     At all times in which they interacted with Plaintiff on or about August 13, 2019, Defendants acted within the course and scope of their employment.

82.     While acting under color of law, Defendants deprived Plaintiff of his civil rights under the due process clause of the Fourteenth Amendment to be free from constitutionally repugnant interference with his liberty interest, enforceable through 42 U.S.C. § 1983.

## COUNT 4
## 42 USC § 1983
## Entity Liability
## (Defendant City of Billings and AMR)

83.     Plaintiff hereby incorporates all prior paragraphs.

84.     Defendants City of Billings and AMR at all relevant times have maintained policies, customs, or practices that have been the cause, the moving force, behind the violation of citizens' rights. Specifically, these policies, customs, or practices include, but are not limited to: the use of excessive force; the tolerance of the use of excessive force; the unreasonable and medically unnecessary use of chemical sedatives on detainees and arrestees; escalating

situations that did not warrant escalation; failure to use appropriate and generally accepted procedures for apprehending suspects; failing to investigate or evaluate prior complaints or incidents involving excessive force; failing to investigate and discipline violations of constitutional rights; encouraging or tolerating a "code of silence" among law enforcement officers whereby officers refuse to provide adverse information against one another; tolerating or promoting inadequate, deficient and improper procedures for handling, investigating and reviewing complaints of misconduct; failing to discipline officers who use excessive force or commit other civil rights violations; tolerating recurring instances of violent interactions with the public; failing to maintain a process for identifying and deterring excessive use of force or other civil rights violations; failing to adopt adequate policies to effectively prevent the unnecessary use of excessive force, and failing to adopt adequate policies to effectively prevent unnecessary escalation of incidents.

85. The above-described policies, customs, and practices were the direct, proximate cause of violation of Plaintiff's Fourth and Fourteenth Amendment rights, enforceable through 42 U.S.C. § 1983.

## COUNT 5
## Montana Constitutional Rights
## (All Defendants)

86. Plaintiff hereby incorporates all previous paragraphs.

87. Pursuant to the Montana Constitution, Seymour has the fundamental, inalienable, and self-executing rights to individual privacy; to be secure in his person, papers, home, and effects from unreasonable searches and seizures; and not to be deprived of life, liberty, or property without due process of law.

88. All Defendants' acts and omission related to the incident involving Plaintiff on August 13, 2022, violated Plaintiff's foregoing rights under the Montana Constitution.

89. Each of the foregoing acts and/or omissions in this Count directly and proximately caused or contributed to Plaintiff's constitutional deprivations, injuries, and damages, and Plaintiff is entitled to compensatory damages and attorneys' fees for Defendants' violations of his state constitutional rights.

## COUNT 6
## Assault and Battery
## (All Defendants)

90. Plaintiff hereby incorporates all previous paragraphs.

91. By their words and acts, all individual Defendants threatened to do bodily harm to Plaintiff.

92. By using excessive force, all individual defendants made harmful or offensive contact with Plaintiff.

93. These individual defendants' intentional acts constituted assault and battery upon Plaintiff, and directly and proximately caused injuries to Plaintiff.

94. The aforesaid acts of these individual defendants were taken within the scope of their employment by the City of Billings and/or AMR.

95. Pursuant to MCA §2-9-102 Defendant City of Billings is liable for the tortious acts of its employees as described in this Complaint, and Defendant AMR is liable under respondeat superior for the tortious acts of its employees as described in this Complaint.

### COUNT 7
### Negligence
### (All Defendants)

96. Plaintiff hereby incorporates all previous paragraphs.

97. At all times pertinent to this Complaint, individual Defendants were subject to a duty of care under state law relating their official functions as police officers and medical care providers. The conduct of individual Defendants as set forth in this Complaint does not comply with these standards of care.

98. At all times pertinent to this Complaint, entity Defendants were subject to a duty of care under state law relating their hiring, training, and supervision of their

employees. The conduct of entity Defendants as set forth in this Complaint does not comply with these standards of care.

99.   Pursuant to MCA §2-9-102 Defendant City of Billings is liable for the tortious acts of its employees as described in this Complaint, and Defendant AMR is liable under respondeat superior for the tortious acts of its employees as described in this Complaint.

100.   As a direct and proximate result of Defendants' negligence, Plaintiff suffered injuries.

## COMPENSATORY DAMAGES

101.   As a direct result of Defendants' unlawful conduct, Seymour suffered violations of his constitutional rights as set forth above.

102.   As a direct and proximate result of Defendants' unlawful conduct, Seymour suffered physical and emotional pain and injuries.

103.   As a direct and proximate result of Defendants' unlawful conduct, Seymour had to defend himself against unwarranted criminal charges.

## PUNITIVE DAMAGES

104.   Plaintiff has filed this action against the individual Defendants in their individual and official capacities.

105. Defendants acted knowingly, deliberately, intentionally, and maliciously without regard for Plaintiff's rights, interests, and well-being.

106. Defendants exhibited a reckless or callous disregard for Plaintiff's constitutional, statutory, and common law rights; Defendants intentionally violated federal law; and/or Defendants' conduct was precipitated by evil motive or intent. Accordingly, imposition of punitive damages is proper and warranted under 42 USC §§ 1983 and 1985.

107. Defendants' unlawful acts and omission were willful and/or reckless; Defendants deliberately acted with indifference to the high probability of injury to Plaintiff. Such conduct justifies the imposition of punitive damages under MCA §§ 27-1-220, 221 in the amount sufficient to punish Defendants and to serve as a warning to other persons and legal entities similarly situated that conduct of the kind engaged in by Defendants is unacceptable in our society and will not be tolerated.

## ATTORNEYS' FEES

108. Pursuant to 42 USC § 1988, the Court may allow an award of attorneys' fees to Plaintiff if he prevails on claims asserted under 42 USC § 1983.

109. Plaintiff is entitled to recover reasonable attorneys' fees for violations of state and United States constitutional rights under Montana's private attorney general doctrine.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief:

1. For damages in a reasonable amount to compensate Plaintiff fully for deprivation of his constitutional rights;

2. For damages in a reasonable amount to compensate Plaintiff fully for all injuries;

3. For punitive damages in an amount sufficient to punish Defendants and serve as a warning to other similarly situated persons and entities that such conduct will not be tolerated;

4. For declaratory and injunctive relief;

5. For attorneys' fees pursuant to 42 USC § 1988;

6. For reimbursement of costs and expenses of suit; and

7. For such further relief as the Court deems fair and just.

Respectfully submitted this 9th day of August, 2022.

/s/Timothy M. Bechtold
BECHTOLD LAW FIRM

/s/Ryan W. Aikin
AIKIN LAW OFFICE

Attorneys for Plaintiff